IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal No. 3:12cr132

MARIO ALBERTO MOLINA

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's *pro se* MOTION IN REDUCTION IN SENTENCE COMPASSIONATE RELEASE PURSUANT TO 3582(c)(1)(A) (ECF No. 43), the BRIEF PURSUANT TO COURT'S ORDER ADDRESSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 54), the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 58), the STATUS REPORT (ECF No. 61), and the defendant's *pro se* Letter Motion (ECF No. 62) which the Court will construe as the defendant's *pro se* Reply in Support of the MOTION IN REDUCTION IN SENTENCE COMPASSIONATE RELEASE PURSUANT TO 3582(c)(1)(A) (ECF No. 43) and the Clerk shall file the defendant's letter (ECF NO. 62) as a reply. For the reasons set forth below, the defendant's *pro se* MOTION IN REDUCTION IN SENTENCE COMPASSIONATE RELEASE PURSUANT TO 3582(c)(1)(A) (ECF No. 43) is denied.

**BACKGROUND**

Pursuant to a plea agreement, the defendant pled guilty to a one Count Criminal Information, and was convicted of maiming in aid of racketeering, in violation of 18 U.S.C. § 1959(b)(2). At the time of the offense conduct, the defendant was acting as a member of the gang known as Mara Salvatrucha ("MS-13"). Molina became a member of MS-13 in approximately 2010 after going through the process of being "jumped in" to the gang. Molina became a member of the Sailors Set which was an MS-13 clique operating in and around Richmond, Virginia. At the time of the offense of conviction, the defendant held the position of soldier within the Sailors Set clique.

The maiming of which Molina was convicted occurred when members of the Sailors Set attempted to kill another member of the Sailors Set who was suspected by the leadership of the Sailors Set to be either a member of a rival gang or an informant of a rival gang. Molina's responsibility in the offense was to make sure that the attack was successfully carried out by two younger members of the Sailors Set. The victim of the maiming was stabbed more than a dozen times and required more than 250 stitches throughout his ribs, arms, underarms, shoulders, back and head. He suffered to his lungs and was hospitalized for a week. He suffered from

psychological and emotional trauma as a consequence of the brutal attempt on his life.

On January 12, 2012, the defendant was sentenced to 293 months of imprisonment and a period of supervised release of five years along with appropriate standard and special conditions of release. He is presently serving his sentence at FCI Bennettsville, a medium security facility consisting of 1,381 inmates which appears to be reporting two active COVID-19 inmate cases and fourteen active staff cases. According to the record, Molina has received both injections of the Pfizer-BioNTech vaccine.

In his *pro se* Motion for Compassionate Release, the defendant advanced no medical reasons in support of his claim for compassionate release. The Court appointed the Federal Public Defender to represent Molina (ECF No. 45) but the Federal Public Defender had a conflict and was required to withdraw from representation (ECF No. 47) whereupon the Court appointed CJA counsel to represent the defendant (ECF No. 48). After reviewing the file, the CJA counsel filed a motion for leave to withdraw as counsel for the defendant (ECF No. 53) and concluded that Molina's request for compassionate release was frivolous (ECF No. 53, ¶ 6). Nonetheless, CJA counsel filed a BRIEF PURSUANT TO COURT'S ORDER ADDRESSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 54) in which he

3

advanced the assertion that the combination of the COVID-19 pandemic and the defendant's present medical condition (being overweight and suffering from high blood pressure) present "extraordinary and compelling circumstances" for compassionate release.  Also, counsel argued that the defendant did not present a danger to the community.  Counsel also pointed out that the defendant had not committed an institutional infraction since 2016 as further evidence that he was not dangerous and also noted that the defendant had, while in prison, spent his time productively while in confinement.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i).  United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive

4

professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271-276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, \_\_\_\_ F. Supp.3d \_\_\_\_, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

5

1. **Particularized Susceptibility**

The defendant avers that he is overweight and has high blood pressure. Those conditions can serve as risk factors for susceptibility to COVID-19. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement. To begin, nothing in the record shows that Molina's conditions are serious. Indeed, it appears from the record that the conditions on which Molina bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). Moreover, Molina has been fully vaccinated with the effective Pfizer vaccine.

In sum, Molina has not met the particularized susceptibility risk facet of the applicable test.

2. **Particularized Facility Risk**

Nor has Molina met the particularized facility risk component of the appropriate test. His motion cites press releases respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Bennettsville, the defendant's facility of incarceration. Further, the record reflects that FCI Bennettsville had nine active

case of COVID-19 among inmates, 14 active cases of COVID-19 among staff, and 85 inmates who had previously recovered from COVID-19. There have been no reported deaths there. In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons. And, Molina, like others at FCI Bennettsville, has received COVID-19 vaccines. On this record, the particularized facility risk facet of the test has not been met.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Molina had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because he has had two reported infractions during his eight years of incarceration and he has a good release plan.

However, Molina, a member of a violent gang, was convicted of a violent offense involving an effort to murder another human

being. And, it is significant that one of his two in-prison infractions involved possession of a dangerous weapon.

It is correct that Molina has taken educational and vocational courses and is pursuing his GED. But those rehabilitative undertakings do not offset the need to protect the public, the need to provide deterrence, and the need to promote respect for the law which are as important today as when Molina's sentence was imposed for this member of a violent gang who was convicted of a violent offense, seeing to it that a murder was carried out as part of his gang's ritual of membership.

While Molina's Motion for Compassionate Release (ECF No. 43) and counsel's <u>Anders</u> brief (ECF NO. 54) were pending, Molina wrote the Court (ECF No. 62). He apparently thought his motion had been denied and asked that it be reconsidered. The Court will consider that letter (ECF No. 62) as a supplemental brief. Therein, Molina complains his medical records have not been given to him and that they would prove that he has high blood pressure which has gotten worse necessitating an "upgrade" in his medication. However, Molina's counsel has argued that Molina has high blood pressure and is obese. Molina's supplement supports the conclusion that he has a chronic condition that is being managed (by medication) in prison. Thus, the supplemental brief does not change the basic

8

analysis which, as explained, calls for denial of compassionate release.[1]

## CONCLUSION

For the foregoing reasons, the defendant's *pro se* MOTION IN REDUCTION IN SENTENCE COMPASSIONATE RELEASE PURSUANT TO 3582(c)(1)(A) (ECF No. 43) augmented by the BRIEF PURSUANT TO COURT'S ORDER ADDRESSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 54) will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to the defendant.

It is so ORDERED.

                                 /s/       *R E P*
                             Robert E. Payne
                             Senior United States District Judge

Richmond, Virginia
Date: April 22, 2021

---

[1] Molina notes that the vaccine has been approved for emergency use only. That does not assist his case.
  There is no need to address the adequacy of the release plan except to say that it does nothing to show that the current sentence is not sufficient and not greater than necessary to accomplish the statutory sentencing objectives.